JAMES L. McDONALD, WILLIAMSON GRAHAM, AND JOEL STODDARD *v.* BENJAMIN ASKEW, SR., BENJAMIN ASKEW, JR., AND A. ASKEW.

INTEREST IN WATER ACQUIRED BY APPROPRIATION.—The interest in water acquired by one who locates on the bank of a stream, and appropriates the waters of the same for machinery, is not property in the water as such, but the right to the momentum of its fall at the point of location and to the flow of the water in its natural course above.

EFFECT OF SALE OF WATER IN A STREAM ON PRIOR RIGHT TO ITS USE.—If one who has appropriated a part of the water of a stream to propel machinery at a point on the same, makes a conveyance of all his interest in the water of the stream to one who has a ditch above, he does not thereby lose his prior right to the water which flows down after the sale, as against one who appropriated the water of the stream below him after his appropriation, but before his sale.

SAME.—A person who has built a mill on a stream and appropriated a part of its water to propel machinery, does not lose his prior right over one who has claimed the water below him for mining purposes, by a sale of his interest in the water of the stream to be used in a ditch above.

APPEAL from the District Court, Tenth Judicial District, Yuba County.

The plaintiffs' grantors, in the beginning of 1850, erected a mill on the banks of Bear River, and appropriated water from the stream to propel its machinery. Afterwards defendants located a mining claim below the mill, and erected a dam to turn the water of the stream on to the bank to work the claim. Plaintiffs complained that the backwater from the dam impeded their waterwheel.

The other facts are stated in the opinion of the Court.

*J. L. Ashford*, and *G. N. Swezy*, for Appellants.

The proposition of the Court below that the sale to the Bear River Company rendered the prior rights of the plaintiffs to their flouring mill and appendages, or mill site, subservient and subsequent to the rights of the defendants, we think wrong. We say the plaintiffs had a mill and mill site, both older in location than any rights of the defendants. Now, we claim that whether that mill was run by steam, horse, water, or wind power, that the defendants, who came there after that mill was erected, had no right to flood that mill, or back water up so as to interfere with the running or the use and enjoyment of the same by the plaintiffs. This they would not have a right to do, even if the defendants abandoned the use of the mill as a mill, and converted it into a residence. It is the plaintiffs' superstructure, and being located there prior to any rights of the defendants, the defendants have no right to flood the same, nor any part thereof; it matters not to what use the plaintiffs may put it.

Again, let us suppose that the plaintiffs in digging a well near said mill should strike a constant running stream sufficient to run said mill, and that the same could be turned on to the waterwheel with less expense than damming the river and turning the water as now used; or suppose that some

26

ditch company should bring along by plaintiffs' mill a pure, clear stream of water, and offer them a supply to run their mill at a sum greatly less than the expense of keeping in repair the dam, race, and flume, now used in turning the present water upon said wheel; or suppose the plaintiffs should conceive it to be of less expense, and more certain to obtain a constant supply, to bring the waters of another stream to their mill for the propelling of the same; and that in all of these cases, without changing the said mill, waterwheel, or tail-race, the plaintiff should abandon his water privileges and substitute the waters so obtained in the stead thereof, could it be contended in such cases, or in any one of them, that the defendants would have a right to flood said mill, waterwheel, or tail-race, with their dam, or otherwise, on account thereof, interfere with the use or enjoyment by plaintiffs of their said property?

The Court finds that the plaintiffs had the right to one thousand inches of the waters of Bear River. The complaint avers, and such averment is not put in issue, that the plaintiffs had a " water privilege of said Bear River for the propulsion and running of said mill." The Court does not say where on said Bear River that the one thousand inches of water right was situated. If it is the same referred to in the complaint, then of course it is connected with the mill, and must be located near the mill. If a water right independent of the mill, then it has no right to figure here, and it matters not to whom the plaintiffs have sold it, or what the plaintiffs have done with it. If it is the water right referred to in the complaint, and used in the propelling of the mill, it was simply a right to use, for the purposes of their mill, the water of Bear River, as known and understood to be Bear River, at the point of said mill. It was to the waters at that point the plaintiffs' right existed. And we claim that in case the plaintiffs sold or relinquished all their rights to the waters ten miles above that point, it is not a sale or relinquishment of all their rights to the use of the waters of Bear River at the point of their mill; and the rights of the plaintiffs would not thereby become sub-

ject or subsequent to the defendants, even if the law is as laid down by the Court below.

*W. C. Belcher*, and *J. O. Goodwin*, for Respondents.

Pending the litigation plaintiffs sold that right, and it does not matter whether the sale was to A. or B. The sale was the material fact, and that is found. Moreover, having simply a right of use at their mill, they sold the body of the water to be taken out of the river several miles above their mill and carried away, and thus deprived the defendants as well as themselves of its use. By this sale plaintiffs parted with all the right they had acquired by their prior location, and whatever rights they now have to use the waters of the river for milling or other purposes have been acquired subsequent to the sale, and are subject to defendants' right of use for working their mines. This was the conclusion of the District Court, and we think its judgment in the case should be affirmed.

But counsel urge very earnestly that plaintiffs have a mill site and a valuable mill which they ought at least to have the privilege of running by steam or water brought in from some source other than Bear River, and that defendants ought not to be permitted to interfere with the use and enjoyment of their mill site, or mill, even if they have sold away the water that furnished the motive power, and deprived defendants as well as themselves of its use. The plain answer to all that is, that it nowhere appears in this case, nor is it a fact that the defendants have in any way interfered with plaintiffs' mill site or mill, except so far as it is charged they had impeded the convenient use of their waterwheel. The waterwheel is useless without water to move it, and may properly be said to be appurtenant to the water right. The water right they sold, and if our proposition be correct, that having sold all the right they had acquired by prior location, and more, all the rights they now have to use the waters of Bear River for milling or other purpose is subsequent and subject to the right of defendants to use the same, they cannot complain.

By the Court, Shafter, J.

This is an action to restrain the defendants from erecting a dam across Bear River, whereby, as the complaint alleges, the water of the river will be impeded in its usual current and flowed back upon the wheel of the plaintiffs' flouring mill, thereby preventing the running of said mill, to the irreparable damage of the plaintiffs.

The defendants, by a supplemental answer, filed by leave of the Court, admitted that the plaintiffs at the commencement of the action, were the owners and entitled to the use of the water at their mill to the extent of one thousand inches and no more; but they averred that pending the action and on the 17th of December, 1862, the plaintiffs " conveyed by deed to the Bear River and Auburn Water and Mining Company all the waters of Bear River to the capacity of the water ditches and works of the said company, to wit: the water ditch known as the Bear River and Auburn Water and Mining Company's Ditch, and the water ditch known as the Gold Hill Ditch. That the capacity of the ditch first named, on the day the deed was executed, was more than two thousand inches, and the capacity of the Gold Hill Ditch one thousand inches. That both said ditches take the waters of the said river from the channel thereof at points more than ten miles above the plaintiffs' said mill. That the plaintiffs claimed and owned the said one thousand inches by virtue of a location and appropriation in or about the year 1849 or 1850, and prior to the construction of the dam of the defendants and the location and appropriation of the waters of said river by them for mining purposes, which event took place in 1853. That at all times since the said sale and conveyance of the waters of Bear River on the 17th of December, 1862, the Bear River and Auburn Water and Mining Company have taken out and diverted from the river, at the heads of their said ditches, and more than ten miles above the plaintiffs' said mill, all the waters of the river to the full capacity of the ditches, and at all times and seasons since the said date much more than one thousand inches, the

amount to which plaintiffs were entitled by virtue of their prior appropriation.  That the Bear River and Auburn Water and Mining Company, by means of their said ditches, conduct the waters a long distance away from the river and so use and appropriate the same that no part thereof, or if any, very little, and less than one hundred inches of the same, is returned or comes back to the channel of said river at or above the mill of the plaintiffs or the dam of the defendants."

The trial was by the Court, who found that the admitted prior right of the plaintiffs was limited to one thousand inches. That thereafter and prior to the commencement of the action, the defendants located a mining claim below the plaintiffs' mill, and erected a dam across the river for the purpose of raising and running the water upon their mining ground. That pending the litigation, the plaintiffs conveyed to the Bear River and Auburn Water and Mining Company, all their right, title, and interest in and to the waters of Bear River, or sufficient thereof to fill the ditches of the company, and that the ditches are of greater capacity than the amount claimed by the plaintiffs.  That during a large portion of the year the Bear River Company use almost the entire volume of the water of the river, but that below their dams and above the plaintiffs' mill, there are some small tributaries coming to Bear River, sufficient to run the mill, even at the low stage of the water, a portion of the time.  That at the lowest stage the water of the said tributaries and waste water from the said ditches amounts to seventy-five inches, and that the mill can run one stone upon seventy inches.

The Court considered that the plaintiffs, "by the sale of their water, and all of it, to the Bear River Company, had lost their prior right; and if they then laid a new claim to the use of the surplus water of Bear River, it being later in time, the claim must be subservient to the claim of defendants for their mining purposes; and their claim is to raise their dam to the height of five feet.  This claim of defendants is prior in right to any new claim of water made by plaintiffs subsequent to the sale of their original right of use, and this claim

they are entitled to use in any legitimate manner, with all its incidents. It is true, even a legitimate and reasonable use by defendants of their claim may work an injury to the plaintiffs; but whatever rights the plaintiffs now have to the use of the water in the running of their mill must be subject to the now prior rights of defendants." On these views judgment was entered for the defendants, dissolving the temporary injunction and dismissing the suit with costs.

It will be observed that the reasoning proceeds upon the assumption that the rights which the plaintiffs had acquired by reason of their location and appropriation in 1849–50, passed to the Auburn Water and Mining Company by the deed of December 17th, 1862; and if such was the fact, the conclusion at which the Court arrived may, for the purposes of this hearing be taken as correct. But we do not consider that the subject matter of the conveyance was identical with the rights vested in the plaintiffs, and for the protection of which this suit was instituted.

In the first place, the interest of the plaintiffs in the waters of Bear River related to the point where their dam was built and where the mill stood; while the interest conveyed related to a point where the then existing ditches of the grantees tapped the river ten miles above. That which the plaintiffs parted with is not identical, then, with that which they had, in the matter of location or position.

*Interest acquired in water by appropriation, or purchase and sale of the same.*

But, further, the interest vested in the plaintiffs, and the interest conveyed by them, differ in essential nature. The interest acquired by the plaintiffs through their prior location was not a property in the water as such. (*Eddy* v. *Simpson*, 3 Cal. 251; *Kidd* v. *Laird*, 15 Cal. 179,) but a right to the momentum of its fall at the point where the stream was crossed by the dam, and to the flow of the water in its natural course above as subservient to that end. (*Kelly* v. *Natoma Water Company*, 6 Cal. 108; Ang. W. C. 91, 96.) The sub-

ject matter of the conveyance made by the plaintiffs was not water power, but water as such; or the right to divert water up to the capacity of certain existing ditches to receive it. If the proper data were given, the amount of water which the grantees thus acquired the right to divert might be stated in cubic feet or in gallons. A grant may be of a certain quantity of water; for instance, for as much as would pass through a pipe or floodgate, or a sluiceway of certain dimensions; or it may be of a certain extent of water power, as much and no more, as is required to operate certain machinery. This distinction is as obvious as it is important. (*Miller ex parte*, 3 Hill, 418; *Bardwell* v. *Ames*, 22 Pick. 333; *Kennedy* v. *Scovil*, 12 Conn. 317.) In *Mayor, etc.* v. *Commissioners of Spring Garden*, 7 Barr, 348, it appeared that the Legislature of Pennsylvania granted the privilege of all the water power of the River Schuylkill, and made a subsequent grant to the District of Spring Garden and Northern Liberties of the right to erect works and supply their inhabitants with water from the river; and it was held that the grant and the acts done thereunder were not in derogation of the right under the previous grant of the water power. Said Mr. Chief Justice Gibson: "A grant of a water power is not a grant of the water for anything else than the propulsion of machinery; and it consequently does not exclude the use of it by any one else, in a way which does not injure or decrease the power. A right may doubtless be granted, if a grant were necessary, to intercept running water and confine it in reservoirs for separate use; but the grant of such right would not be the grant of a water power. No two things can be more distinct and dissimilar."

But notwithstanding the interest transferred to the Auburn and Bear River Water and Mining Company by the deed of December 17th, 1862, was not the identical interest held by the grantors; still if it appeared as matter of fact that a full exercise of the right conferred by the deed, would make the water power of the plaintiffs completely valueless, the judgment would have been free from objection; for in such case the element of irreparable damage would have been wanting.

But it appears by the findings that there are tributary streams entering the river between the head of the ditches named in the deed to the Auburn and Bear River Water and Mining Company and the dam of the plaintiffs, ten miles below; and that when the water is at the lowest stage, "there are seventy-five inches of water passing down the stream, being waste water from the ditches above, and the water of Wolf Creek, a tributary of Bear River, coming in below the dams of the mining companies above;" and that the mill "can run one stone upon seventy inches of water." If the plaintiffs' water power stands thus when the season is at the driest, we cannot doubt that in the wet season its efficiency is impaired much less by the exercise of the rights which passed by the deed, and perhaps not at all. The idea that this residue of power is held by the plaintiffs by newly acquired right, dating from the execution of the deed to the water and mining company, and that it is therefore subservient to the elder right of the defendants, is not only opposed to the view already taken —that the right of the plaintiffs, acquired in 1849, was neither transferred specifically by the deed of 1862, nor rendered valueless by a full exercise on the part of the grantees of the rights acquired under it—but proceeds upon a misconception of the nature of the plaintiffs' interest. We have already given our views on the question of its character, and have only to add, that the plaintiffs had a prior right to the use of all the waters in Bear River, from its springs down, in so far as such use might be necessary as a means to accomplish certain results at the dam. The "water power" to which the plaintiffs were entitled at that point was the principal thing owned by them, and its enjoyment was not dependent upon any given section of Bear River, nor upon any given fraction of its waters. The streams entering the river between the plaintiffs' dam and the heads of the ditches referred to in the deed of 1862, and the drainage generally of that intermediate section, stood in the same relation to the plaintiffs' water power at the dam as the drainage above the heads of the ditches. The original right of the plaintiffs to the drainage between the

ditch heads and the dam is obviously unaffected by the deed, and their right to the drainage of the water sheds of Bear River above that point is unaffected by it also, except as it clothes the grantees with the right to dip or pump out or lead away at that point an ascertained or ascertainable amount of water. The prior right of the plaintiffs is now on foot, and the only effect of the conveyance is to subject the right to the hazard of being less beneficial to the plaintiffs throughout the year, or perhaps in the dry season only, than it would have been had the deed not been given. The case stands as it would if the grantees in the deed had tapped the river at the ten mile point and drained it to the capacity of their ditches for a period of five years, without the consent and adversely to the plaintiffs. The right acquired by such adverse possession, however it might be a clog upon the beneficial use of the water below, would in no sense involve the plaintiffs' prior right as such; nor does it follow necessarily that its beneficial enjoyment would be at all impeded. Under the state of facts which we are now considering argumentatively, it is apparent that the defendants herein could not say that the plaintiffs' prior rights, as against them, were at an end, and that whatever rights the plaintiffs might have to the flow of the water were newly acquired and junior to their own. A record presenting the state of facts here suggested would be like the one now before us in every substantial particular.

It seems to be conceded that the plaintiffs are entitled to judgment for the specific relief prayed for in the complaint should the special answer be held to be invalid; but inasmuch as it appears, by admission in the supplemental bill, that the dam, if raised no higher than four feet above the original bed of the stream, would be of no prejudice to the plaintiffs, and inasmuch as the defendants in their answer to the supplemental complaint aver that the dam might be raised to a still greater height without any detriment to the superior rights of the plaintiffs; and inasmuch as the question of fact involved does

27

not appear to have been passed upon by the Court below, we cannot enter a judgment determining the rights of the parties with proper exactness. On this state of the record we can do no more than reverse the judgment and award a new trial.

And it is so ordered.