# NEVADA COUNTY AND SACRAMENTO CANAL COMPANY *v.* G. W. KIDD et als.

Relief to be granted on Verdict.—Although when an answer is filed, the Court, under section one hundred and forty-seven of the Practice Act, may grant any relief consistent with the case made by the complaint and embraced within the issue, yet the Court should not grant any relief not prayed for, unless the facts proved within the issues and the circumstances clearly justify it.

What a Verdict for Plaintiff Finds.—Where the complaint alleges a trespass on a dam site and dam in the process of erection, and on the site for a canal and the canal thereon surveyed and commenced, that the defendants, with force and arms, expelled the plaintiff from said property, and has since kept him thus expelled, and demands a judgment for damages only, a verdict for the plaintiff for damages does not necessarily find all the facts averred in the complaint. Such verdict does not necessarily find a continual withholding of possession, or other facts entitling plaintiff to an injunction.

Interference with Judgment rendered by District Court.—When there is no prayer in the complaint for possession, and the District Court directs a judgment for damages alone to be entered for plaintiff, upon a verdict in his favor for damages, in an action for an alleged trespass and ouster with force and arms, and forcible detention of possession, the appellate Court will not reverse the judgment on an appeal upon the judgment roll.

Points decided.

PRESUMPTION IN FAVOR OF A JUDGMENT.—When the judgment gives *all* the relief demanded in the complaint, the presumption is that the Court below has entered such a judgment as was required by the facts in issue proved, and the appellate Court will not disturb the judgment, unless it affirmatively appears that the plaintiff is entitled to other relief than that given.

AMENDMENT TO PRAYER OF COMPLAINT.—If the Court below refuses to allow the prayer of the complaint to be amended after a verdict for the plaintiff and judgment entered, the presumption is that it acted correctly, and that there were no facts proved to warrant a different judgment than that prayed for. The party asking the amendment should show affirmatively that the facts proved within the issues made will justify a different judgment than that prayed for and given.

PRAYER.—Section thirty-nine of the Practice Act requires the complaint to contain "a demand of the relief which the plaintiff claims." The policy is to require the plaintiff to apprise the party of the extent of the judgment he demands. For this purpose the prayer is sometimes significant.

PROOFS SHOULD ACCORD WITH PRAYER.—If the relief prayed for is appropriate to the facts alleged, the defendant has a right to assume that the case will be tried in accordance with the theory of the prayer; and where the case is so tried, it would work injustice to allow the prayer for relief to be amended after verdict by inserting a prayer for other and different relief, that might be brought within some of the issues without regard to the question as to whether such issues were actually tried and determined.

AMENDING PRAYER AFTER VERDICT.—The Court should not allow the prayer for relief to be amended after verdict, so as to ask for further relief, unless the facts averred and issues joined justify it, and all those issues to which the further relief demanded relate have been fully litigated and fairly determined, and the additional relief has been asked in proper time.

RELIEF TO BE GRANTED UPON PRAYER OF COMPLAINT.—The granting, after verdict, of greater relief than that prayed for in the complaint, either with or without an amendment of the prayer, is a matter resting in the sound discretion of the District Court, and the appellate Court will not interfere with that discretion, unless it is made to appear that it has been unsoundly exercised.

DIFFERENT COUNTS IN COMPLAINT.—If the complaint contains two independent counts, each complete within itself, and concluding with its own appropriate prayer for relief, and separately signed by counsel, the prayer to the second count will not be deemed to have any reference to the first, and on a verdict on the first count only, the relief granted will follow the prayer of that count.

INJUNCTION TO RESTRAIN TRESPASSES.—The Court will not interfere, by injunction, to restrain the commission of naked trespasses, where there is no waste committed.

INJUNCTION TO RESTRAIN DIVERSION OF WATER. — A Court of equity will not restrain the diversion of water by injunction until the party complaining is in a condition to use it. While the dam and canal of the party claiming the water are in process of construction, but are not yet in a condition to appropriate the water, the use of the water by other parties is no injury, and such use affords no ground for relief, legal or equitable.

ADVERSE CLAIM TO USE WATER.—A party who is not in the possession of water cannot maintain an action under section two hundred and fifty-four of the Practice Act, to determine an adverse claim to it.

REMEDY OF PARTY CLAIMING WATER.—If a party claiming water is constructing his dam and canal, but has not yet diverted the water, an action for damages and to recover possession of the dam site and dam, and of the canal site and canal, will afford an adequate remedy for a trespass upon an ouster from the possession of such dam and canal.

DEMURRER.—If the second count is in part a copy of the first, but the additional allegations it contains do not present any new or additional ground of relief, the second count is redundant, and the judgment will not be reversed because a demurrer to such second count was sustained, for no injury was sustained thereby.

ACTION FOR INVASION OF WATER RIGHT.—Until a claimant is himself in a position to use the water, the right to the water does not exist in such a sense as to enable him to maintain an action against another, either to recover the water or damages for its diversion.

DISTINCT CAUSES OF ACTION.—An entry upon and ouster from a dam site and dam in process of construction, and a canal site and canal in process of construction, and a diversion of water claimed by means of the dam and canal, are two distinct causes of action, which cannot be united in the same statement of cause of action in a complaint, but should be separately stated.

DEMURRER FOR AMBIGUITY.—A complaint which leaves it in doubt whether the plaintiff sues for a trespass upon and ouster from his dam site and dam in process of construction, or for a diversion of the water claimed by the plaintiff, is ambiguous, and a demurrer for that reason should be sustained.

ERROR IN FAVOR OF APPELLANT.—A judgment will not be reversed for an error which was in favor of the appellant.

APPEAL from the District Court, Fourteenth Judicial District, Nevada County.

The following was the complaint in this cause:

"Now comes the plaintiff above named, and by leave of the Court first had and obtained, files this its amended complaint in the above entitled cause, and alleges that plaintiff is, and has been for a long time prior to the commission of the grievances hereinafter complained of, a body corporate, duly organized, created, existing, and acting under and by virtue of the laws of the State of California.

"That said plaintiff was duly organized, created, and incorporated by virtue of and under the laws of the State aforesaid, under the name and style of the 'South Yuba Mining and Sacramento Canal Company,' but is now existing and exercising its corporate functions under the name and style of the 'Nevada County and Sacramento Canal

Company,' under and by virtue of an Act of the Legislature of the State aforesaid, entitled 'An Act to change the name of the South Yuba Mining and Sacramento Canal Company to Nevada County and Sacramento Canal Company,' approved January 25th, A. D. 1855; and for cause of action against the defendants herein, plaintiff avers and shows to the Court:

"That heretofore, to wit: on the 16th day of February, A. D. 1855, and long prior thereto, at Nevada County, State of California, the plaintiff had appropriated and was the owner of, and in the possession, use, and enjoyment of, and thence hitherto hath been and still is the owner of and entitled to the possession, use, and enjoyment of all that certain property, rights, privileges, and appurtenances situate in the County of Nevada, State aforesaid, and described as follows, to wit: That certain water right embracing and including all the natural waters flowing or being, or thereafter at any time to flow or be within the bed, banks, and channel of the South Yuba River, at a point on said river about four hundred and twenty rods above the summit of the gap which divides the waters of the South Yuba River from the waters of Bear River, and immediately above some falls or rapids in the South Yuba River, where a large pine or fir tree lies across said river, said point being within the Township of Washington, County of Nevada, State aforesaid, together with the right to divert all of said waters, by means of a dam then in course of construction by plaintiff upon and embracing the same land covered by and whereon stands a dam at said point known as the 'South Yuba Canal Dam,' into and through the canal then projected, surveyed, and commenced by plaintiff, connected with and extending from said point of dam down the easterly side of said river, and including and embracing for the distance of eight hundred and forty rods in length the same land and the whole thereof whereon is erected and being the canal known as the South Yuba Canal, thence into the mines and mining districts below Bear Valley, in the county and State aforesaid, for mining, hydraulic, and other purposes and uses; that on the day last

aforesaid, and long prior thereto, thence until the commission
of the grievances by the defendants hereinafter complained
of, plaintiff was the owner of and in the possession of its said
water right, and of its said site for a dam, and of its dam in
course of construction thereon, and of its said site for a canal
and canal thereon projected, surveyed, and commenced, as
aforesaid, for the purposes aforesaid, and was entitled to
divert all the waters of the river aforesaid, at the point
aforesaid, by the means aforesaid, into and through the
canal aforesaid, for the purposes aforesaid, and to have, pos-
sess, use, and enjoy said waters so to be diverted, and all
benefit and advantage thereof, and was then in the actual
and diligent exercise of its said right so to divert the said
waters, and but for the wrongful and unlawful acts of the
defendants hereinafter set forth and complained of, plaintiff
would thence hitherto have continued so to exercise and
enjoy its said right to divert, use, and enjoy the said waters
by the means aforesaid, for the purposes aforesaid, and would
have so diverted said waters, and from said day thence
hitherto would have been and now would be in the receipt,
use, possession, and enjoyment of all the benefits and advan-
tages thereof, as it was and is of right entitled.

"That afterwards, on the day last aforesaid, to wit: on the
16th day of February, A. D. 1855, and on divers other days
and times since said date, down to the time of the commence-
ment of this suit, the defendants, well knowing the premises,
but contriving and intending to injure, wrong, and oppress
plaintiff in respect of its property, rights, privileges, and
appurtenances above described, wrongfully and unlawfully,
violently and with force and arms, entered into and upon the
said property, rights, privileges, and appurtenances of plain-
tiff, and drove off, amoved, and expelled plaintiff therefrom
and from the whole thereof, except only that portion of
plaintiff's canal site aforesaid in excess of and beyond the
eight hundred and forty rods in length thereof above
described as embracing and including the land whereon is
erected and being the South Yuba Canal, said excepted

portion being above described as 'extending from the termination of said eight hundred and forty rods, thence into the mines and mining districts below Bear Valley,' and from all exercise of its rights to the possession, use, or enjoyment thereof, and with force, arms, and violence kept and continued plaintiff amoved and expelled therefrom for a long space of time, to wit: thence hitherto; and plaintiff avers that, by reason of the before mentioned wrongful and unlawful acts of defendants so done and committed as aforesaid, it hath, from the day last aforesaid thence hitherto, been hindered, delayed, and wholly prevented from using, exercising, or enjoying its right, as aforesaid, to divert the waters aforesaid at the point aforesaid, by the means aforesaid, for the purposes and uses aforesaid, as it was and is of right entitled to do and might and otherwise would have done, to plaintiff's damage in the sum of one hundred thousand dollars.

"Wherefore, plaintiff brings its suit, and prays judgment against said defendants for the sum of one hundred thousand dollars, and for its costs of suit, etc.

"J. E. HALE,
"D. BELDEN, and
"HAWLEY & WILLIAMS,
"Attorneys for Plaintiff."

"And for other and further cause of action, and as grounds for the equitable interposition and decree of this Court upon the hearing and determination of the above action at law, plaintiff avers and shows:

"That heretofore, to wit: on the 16th day of February, 1855, and long prior thereto, at Nevada County, State of California, the plaintiff had appropriated and was the owner of and in the possession, use, and enjoyment of, and thence hitherto hath been and still is the owner of and entitled to the possession, use, and enjoyment of all that certain property, rights, privileges, and appurtenances situate in the County of Nevada, State aforesaid, and described as follows,

to wit: That certain water right, embracing and including all the natural waters flowing or being, or thereafter at any time to flow or be within the bed, banks, and channel of the South Yuba River, at a point on said river about four hundred and twenty rods above the summit of the gap which divides the waters of the South Yuba River from the waters of Bear River, and immediately above some falls or rapids in the South Yuba River, where a large pine or fir tree lies across said river, said point being within the Township of Washington, County of Nevada, State aforesaid; together with the right to divert all of said waters, by means of a dam then in course of construction by plaintiff upon and embracing the same land covered by and whereon stands a dam at said point, known as the South Yuba Canal Dam, into and through the canal then projected, surveyed, and commenced by plaintiff, connected with and extending from said point of dam down the easterly side of said river, and including and embracing for the distance of eight hundred and forty rods in length the same land, and the whole thereof, whereon is erected and being the canal known as the South Yuba Canal, thence into the mines and mining districts below Bear Valley, in the county and State aforesaid, for mining, hydraulic, and other purposes; that on the day last aforesaid, and long prior thereto, thence until the commission of the grievances by the defendants hereinafter complained of, plaintiff was the owner of and in the possession of its said water right, and of its said site for a dam, and of its dam in course of construction thereon, and of its said site for a canal and canal thereon projected, surveyed, and commenced, as aforesaid, for the purposes aforesaid, and was entitled to divert all the waters of the river aforesaid, at the point aforesaid, by the means aforesaid, into and through the canal aforesaid, for the purposes aforesaid, and to have, possess, use, and enjoy said waters so to be diverted, and all benefit and advantage thereof, and was then in the actual and diligent exercise of its said right so to divert the said waters, and but for the wrongful and unlawful acts of the

defendants hereinafter set forth and complained of, plaintiff would thence hitherto have continued so to exercise and enjoy its said right to divert, use, and enjoy the said waters, by the means aforesaid, for the purposes aforesaid, and would have so diverted said waters, and from said day thence hitherto would have been and now would be in the receipt, use, possession, and enjoyment of all the benefits and advantages thereof, as it was and is of right entitled. That afterwards, on the day last aforesaid, to wit: on the 16th day of February, 1855, and on divers other days and times since said date, down to the time of the commencement of this suit, the defendants, well knowing the premises, but contriving and intending to injure, wrong and oppress plaintiff in respect of its property, rights, privileges, and appurtenances above described, wrongfully and unlawfully, violently and with force and arms, entered into and upon the said property, rights, privileges, and appurtenances of plaintiff, and drove off, amoved, and expelled plaintiff therefrom, and from the whole thereof, except only that portion of plaintiff's canal site aforesaid in excess of and beyond the eight hundred and forty rods in length thereof, above described as embracing and including the land whereon is erected and being the South Yuba Canal, said excepted portion being above described as extending from the termination of said eight hundred and forty rods, 'thence into the mines and mining districts below Bear Valley;' and from all exercise of its right to the possession, use, or enjoyment thereof, and with force, arms, and violence kept and continued plaintiff amoved and expelled therefrom for a long space of time, to wit: thence hitherto; and plaintiff avers that, by reason of the before mentioned wrongful and unlawful acts of defendants, so done and committed as aforesaid, it hath from the day last aforesaid thence hitherto been hindered, delayed, and wholly prevented from using, exercising, or enjoying its right, as aforesaid, to divert the waters aforesaid, at the

point aforesaid, by the means aforesaid, for the purposes aforesaid, as it was and is of right entitled to do, and might and otherwise would have done, to plaintiff's damage in the sum of one hundred thousand dollars. And plaintiff avers and shows to the Court that the said defendants are continuing and threaten to continue, and unless restrained by the order of this Court, will continue all and singular the wrongs and injuries aforesaid toward this plaintiff; that if defendants are permitted to continue the wrongs, injuries, and interference with plaintiff's rights aforesaid complained of, as they are now doing and threaten to continue to do, the injury and loss to plaintiff will be incapable of compensation in damages, and plaintiff's property, rights, privileges, and appurtenances above described will be rendered wholly valueless to plaintiff, and the injury to plaintiff be irreparable.

"Wherefore, the foregoing premises considered, plaintiff prays that, upon the final hearing and determination of this cause, it be by the Court adjudged and decreed that said plaintiff is entitled to the exclusive possession, use, and enjoyment of all the waters of the South Yuba River at the point aforesaid described, with the right, as aforesaid, to divert said waters at said point, by the means aforesaid, into and through the canal aforesaid, for the purposes aforesaid, and that the defendants, their agents, servants, and employés, and all persons acting for, under, or through them or any of them, be forever enjoined and restrained from using, trespassing, or in any manner interfering with plaintiff's right of way and location of site for its canal aforesaid described, and from using or in any manner interfering with plaintiff's site for its dam above described, and from trespassing upon or in any manner interfering with the right of plaintiff to divert, use, and enjoy by the means aforesaid, into and through the canal aforesaid, for the purposes aforesaid, all the waters aforesaid of the South Yuba River, at the point on said river aforesaid described, or for such other or further

order or relief as to the Court may seem equitable, just, and meet, and for general equitable relief, etc.

"J. E. Hale,
"D. Belden, and
"Hawley & Williams,
"Attorneys for Plaintiff."

The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*J. E. Hale, D. Belden, Hawley & Williams, E. Casserly,* and *W. H. L. Barnes,* for Appellant.

The complaint contains a count or cause of action sounding in damages, and also a count or cause of action for equitable relief, stated separately. When this case was here before, (28 Cal. 673,) one question being whether the suit was for the recovery of lands in ejectment, or for the restoration of the plaintiff's water rights, this Court held that "the trespass upon the plaintiff's alleged water rights by the defendants was the *gravamen* of the action, and that a restoration to those rights was the principal object sought by the institution of the suit."

The judgment of the Court below having then been reversed for error here in striking out the material portions of the plaintiff's complaint, and the cause having been remanded for further proceedings, the complaint was again amended in the District Court—this time so as to conform the alleged cause of action more nearly than before to the views expressed by this Court in the language quoted. As thus amended the complaint sets forth: first, a cause of action for trespasses upon the plaintiff's water rights; and second, a cause of action for relief in equity for the protection of those rights, and the restoration of the plaintiff to the full enjoyment of them.

The plaintiff's case, as set forth in the second count, if stated in the fewest words, is: That having appropriated, and being the owner of and in the possession, use, and enjoy-

ment of a certain water right, with its appurtenances, namely: the right to divert the waters of the South Yuba River, and being in the actual and diligent exercise of such right, by means of a dam in course of construction, and of a site for a canal, and the canal thereon projected, surveyed, and commenced, the defendants unlawfully and violently entered into and upon the said property, rights, and appurtenances, and drove away the plaintiff therefrom, and kept and continued the plaintiff excluded therefrom ever since, and are continuing, and threatening to continue, and unless prevented by the Court will continue these wrongful proceedings, to the great injury of the plaintiff—an injury incapable of compensation in damages. Upon this case the plaintiff prays for a decree upon the final hearing, that it is entitled to the exclusive possession and use of its water rights, and of the waters therein included, with the right to divert them by a dam through a canal; that the defendants be enjoined from trespassing on or in any manner interfering with plaintiff's water rights, or the right of way and location for a dam and canal appurtenant thereto, etc.

Clearly enough it would seem that such a case must entitle the plaintiff to some relief, either in law or equity, or both. If in equity, the relief might be original or auxiliary. In the present instance the plaintiff has sought his remedy by a count or cause of action, alleging his rights and the defendants' trespasses, and claiming damages; while in the second count or equitable cause of action, he alleges the same with other facts as a ground for equitable relief. That is, the plaintiff proposes, after first having established its right under the count at law, to obtain such equitable relief as may be necessary to restore it to the full enjoyment of such right, and to protect it against the future trespasses of the defendants.

It would be difficult, indeed, we venture to say impossible, to point out any form of remedy at law for the recovery of the possession of the property claimed by the plaintiff. In this action that property is the plaintiff's water right. That

is the substantive fact of the controversy. The location of the dam and the dam as commenced, as well as the site for a canal and the canal as commenced, (as alleged in the second count,) are mere incidents to the main subject, and figure in the case only as means to its beneficial enjoyment.

This water right is the right acquired by the plaintiff as the first appropriator of the waters of a running stream in a mining district for ditch purposes, and is simply a right— not in the *corpus* or substance of the water as such—but in and to the beneficial use of it for such purposes, and is co-extensive with the use. Subject to such right all the rest of the waters remain *publici juris.* After the water has left the canal or ditch of the appropriator, he loses all interest in or right to it. This was the rule at common law even as between riparian owners, and doubtless applies with the same or greater force to water rights in the mining districts of this State, such as that we were considering. (*Eddy* v. *Simpson,* 3 Cal. 252; *Kidd* v. *Laird,* 15 Cal. 179; *Kelly* v. *Natoma Water Company,* 6 Cal. 108; *McDonald* v. *Askew,* 29 Cal. 206; Washburn on Easements, 213, Sec. 9.)

Such a right, though the subject of property, is an easement or incorporeal hereditament. (Washburn on Easements, 207, Sec. 4; Hilliard on Torts, 613, Sec. 20; *Union Water Co.* v. *Crary,* 25 Cal. 508.) Ejectment will not lie for it. (*Child* v. *Chappel,* 5 Seld. 251.)

For injuries to it, the remedy at law is usually by an action in the nature of trespass on the case. But this is for damages only, and not for the recovery of the possession, a result which cannot be obtained in an action at law, and can only be reached in equity, in the mode adopted in this case, by a decree adjudging to the plaintiff the exclusive enjoyment of the right, and enjoining the defendants from interfering therewith.

That form of relief which consists of the recovery of the possession even of land, though most frequently sought in ejectment, is, however, a well established and not uncommon head of equity jurisdiction; as in the ordinary case of fore-

closure of mortgage, of suit to compel a conveyance, and indeed, in any similar case where equity is invoked to supplement the deficiencies of the law.

*Ubi jus, ibi remedium,* is the boast of our jurisprudence. In this case we have an important and valuable subject of property, namely: the right to divert the waters of a stream for mining and hydraulic purposes, fully alleged, and distinctly found to be in the plaintiff by the verdict of a jury, but by an aggravation of the original trespass of the defendants, the plaintiff has been kept out of possession pending suit. The right, though valuable, is of such a character as not to be the subject of a tangible possession for the purposes of an action at law. Hence the necessity of relief in equity.

It is not material whether at the time of suit brought the plaintiff had progressed so far with its works as to be able to divert or actually enjoy the use of any of the waters, as seems to be supposed by the defendants' demurrer. The law requires no absurd or impossible things. Everything must have a beginning. The rule of law in this State as to the appropriation of waters does not differ from the general rule in reference to acquiring the possession of any other species of property, real or personal. As against a subsequent intruder, the right of appropriation dates from the first substantive act indicating the intent of appropriation. (*Kelly* v. *Natoma Water Co.*, 6 Cal. 108; *Conger* v. *Weaver*, 6 Cal. 558; *Weaver* v. *Eureka Lake Co.*, 15 Cal. 273; *James* v. *Williams*, 31 Cal. 214.) To the same general effect is *McDonald* v. *Bear River Co.*, 13 Cal. 220; *Hill* v. *Newman*, 5 Cal. 455; *Irwin* v. *Phillips*, 5 Cal. 140; *Maeris* v. *Bicknell*, 7 Cal. 261; *Crandall* v. *Woods*, 8 Cal. 136; *Thompson* v. *Lee*, 8 Cal. 275; *Bear River Co.* v. *New York Co.*, 3 Cal. 327; *Hill* v. *King*, 8 Cal. 337; *Weaver* v. *Conger*, 10 Cal. 233; *Ortman* v. *Dixon*, 13 Cal. 33; *McKinney* v. *Smith*, 21 Cal. 374; *Phœnix Co.* v. *Fletcher*, 24 Cal. 481.

This right so acquired may be lost by want of due diligence in prosecuting the work, or any other act of abandon-

ment.   But this is matter of defense, and is covered by the verdict for the plaintiff in this case.   (*James* v. *Williams*, 31 Cal. 213; *Weaver* v. *Eureka Lake Co.*, 15 Cal. 273.)

*A. A. Sargent*, and *A. C. Niles*, for Respondents.

Our demurrer should have been sustained to both counts for the reasons we gave applicable to both; and those reasons are now good against the second count, as well as the further reason that the second count shows no cause for equitable interposition of the Court in that the defendants, at the date the suit was brought, had ousted the plaintiff from the property, and plaintiff had never re-entered thereon, or established its right thereto at law; but the said property was in the possession of the defendants claiming adversely to the plaintiff; and because the plaintiff's remedy is at law for the recovery of the possession of the property.

The first ground of demurrer to the second count is, that several causes of action have been improperly united in said count, and not separately stated, viz: a cause of action arising from the alleged expulsion and amotion of plaintiff by defendants from a dam site and dam thereon; with a cause of action arising from the alleged expulsion and amotion of plaintiff by defendants from a distinct parcel of property, viz: a canal site and canal situated thereon; and the expulsion and amotion of plaintiff by defendants from still another distinct parcel of property, viz: a water right or privilege; and these are not separately stated.   By a glance at the complaint it will be seen that these are treated as distinct parcels of property.   The water right is described as all the waters flowing or to flow through the South Yuba River. The dam and dam site are stated to be at a certain point on said river; "the dam then in course of construction," and the canal site and a canal "projected, surveyed, and commenced."   Whether when the dam and ditch were fully completed the dam would be an appurtenance of the ditch, and need not be separately stated in an action to recover the

property, matters not here.  The dam site may well have belonged to the defendants, and the canal site to the plaintiff, and the object of the statute that requires a separate statement of several parcels of property is defeated by such pleading.  The complaint, by its terms, treats them as several parcels of property; and it is obvious that a defense may, in the nature of things, be interposed to one and not to the other; that a plaintiff may recover the one and not the other; that damages for amotion from one should not be mixed with those for amotion from the other.  Hence the vice of this pleading.  When this case was in this Court before, it was said: "Where the pleader stands upon his pleading and maintains its sufficiency in law, in presence of a demurrer or other hostile attack, the rule to which counsel appeals (that a pleading must be taken most strongly against the pleader where the language is ambiguous) undoubtedly applies.  In such a case all doubts are resolved against the pleader.  He asks no mercy, and is entitled to no quarter." (28 Cal. 684.)

We here attack by demurrer.  The language of the complaint is, the "plaintiff was the owner of and in the possession of its said site for a dam, and of its dam in course of construction thereon, and of its said site for a canal and canal thereon projected, surveyed, and commenced."  If two separate parcels of property are not herein set out, it would be difficult to draw a complaint obnoxious to the objection stated.

But an additional piece of property is alleged to belong to plaintiff—"its said water right"—to water flowing in the South Yuba River.  We shall have occasion to inquire how we could expel and amove the plaintiff from water flowing in the river, which he had never diverted or had the means of diverting at the date of the suit.  But for the purpose of this objection it is sufficient to point out that that water right is stated in the count as a separate piece of property.  We could certainly interpose a separate defense to the claim to the water by force of any other ditch we

might own, even if the plaintiff owned the dam site in ques-
tion, or owned the canal site which it claimed. Such defense
cannot adequately be made when the complaint makes no
separate statement of the parcels of property, and hence the
statutory rule.

If there is any absurdity in treating the water flowing
naturally in the river, unappropriated by any one, by any
canal or other means whatever, as a property right and the
subject of an action, we say that is an absurdity of the plain-
tiff, and demonstrates that at the date of this suit it was not
entitled to sue us for alleged interference with the water.
If we had taken away its canal or its dam, both unfinished,
as the complaint expressly alleges, its action was ejectment.
But it had no right of action against us for diverting the
water until it was in a position to divert the water itself.
As we shall show, it is not alleged in the complaint that
we ever diverted a drop of water before this suit was
brought, as was, indeed, the fact. But the complaint treats
the water right as corporeal, substantive property—a prop-
erty in the *corpus* or substance of the water itself, existing
independent of the dam or ditch; for before the completion
of these it alleges that we " expelled and amoved " it from
this water right. Be plaintiff's theory right or wrong as
to the nature of this property, and that theory runs all
through its case, and is the foundation of the equitable relief
demanded, we say, for the purposes of this point of our
demurrer, the water right is treated as a separate parcel of
property, and it is not separately stated. Hence it is obnox-
ious to the objection which is made in our demurrer.

It cannot be determined from the allegations of this count
(the second) whether or not the plaintiff means to aver any
appropriation or use by itself of the waters, or any part of
the waters of the South Yuba River at any time, by means
of its dam or canal, or otherwise. Discarding even the rule
above invoked for the construction of pleadings, and yet it
cannot be said that the complaint can be made to read that

plaintiff had diverted or appropriated any water at the date of the commencement of the suit. The complaint alleges that its canal and dam were commenced; they were unfinished, and so incapable of diverting water. Yet the complaint avers the plaintiff was "then in the actual and diligent exercise of its right to divert the said waters." It does not say it was actually diverting them. Further on the meaning is rendered still more obscure. It says "plaintiff would thence hitherto have continued to so exercise and enjoy its said right to divert, use, and enjoy the said waters by the means aforesaid, for the purposes aforesaid, *and would have so diverted said waters,*" etc. The last member of the sentence conveys the impression that the words "exercise of the right to divert" was not intended by the pleader to mean an actual diversion, and yet what do they mean? What do they mean in view of the allegation that neither dam nor canal were more than commenced?

The second ground of demurrer (the ambiguity of the second count) was properly sustained.

It cannot be determined from the allegations of said count whether plaintiff intends to charge any diversion or appropriation by defendants of any of the waters of the South Yuba River at any time. The allegation is that on the 16th day of February, 1855, and on divers other days and times since said date down to the time of the commencement of the suit, the defendants wrongfully, etc., entered into and upon said rights, privileges, and appurtenances of plaintiff, and drove off, amoved, and expelled plaintiff therefrom, and kept and continued plaintiff expelled and amoved therefrom thence hitherto. Did the defendants by the acts described divert the waters of the South Yuba? Can any one determine? The theory of the count, as well as plaintiff's brief, is that, in advance of appropriation, a ditch owner has a property right in the waters of a stream; that doing certain acts which, if completed, will ripen into a right to divert water, gives a right before their completion in the *corpus* of the water itself. On the contrary, we say that so far as the

right to divert water from a stream by mining ditches is con-
cerned, it depends solely on appropriation, and has no exist-
ence until appropriation is effected, when the right will date
back by relation to the origin of the enterprise.   Elsewhere
counsel say:   "After the water has left the canal or ditch of
the appropriator, he loses all interest or right to it."   So we
say that before he has a ditch by which to divert it, he gains
no right to it, on exactly the same principle.   The water
right is appurtenant to the canal or means of diversion; not
the canal to the water right, as plaintiff's counsel seem to
assert in the above extract.   The water right is the incor-
poreal hereditament.   No man can acquire a right to the
water in advance of appropriation.   This has been the doc-
trine of this Court from its earliest decisions, and there is no
conflict.

*J. P. Hoge,* and *Wilson & Crittenden,* also for Respondents.

By the Court, SAWYER, C. J.:

There were originally two counts in the complaint, but
the Court sustained the demurrer to the second, and, the
plaintiff declining to amend, entered final judgment thereon,
and the trial was had on the first count only.

The count of the complaint upon which issue was joined
and the trial had substantially alleges that at a time specified
the plaintiff had appropriated, was the owner and in the use
and enjoyment of certain water rights, privileges, and appur-
tenances at a point designated, on the South Yuba River, in
Nevada County, with the right to divert the water of said
river, by means of a dam then in course of construction by
plaintiff, into a canal then projected and surveyed by plain-
tiff, and was the owner and in possession of said water right,
site for a dam, and dam in course of construction, and site
for canal, and canal thereon projected, surveyed, and com-
menced; and that afterward, on a day named, the defendants
unlawfully and violently, with force and arms, entered upon

said property, rights, privileges, and appurtenances, and drove off, amoved, and expelled from the whole thereof, except, etc., and from all exercise of the rights of the possession, use, or enjoyment thereof, and with force and arms kept and continued plaintiff amoved and expelled therefrom for a long space of time, to wit: thence hitherto, and by reason thereof the plaintiff has, thence hitherto, been hindered, delayed, and wrongfully prevented from using, exercising, and enjoying its rights aforesaid, etc., to the plaintiff's damages in the sum of one hundred thousand dollars. The prayer is: "Wherefore, plaintiff brings its suit and prays judgment against said defendants for the sum of one hundred thousand dollars and for its costs of suit."

Upon the trial of the issues taken on this count the jury found the following verdict: "We, the jurors    *    *    * render our verdict *in favor of plaintiff for the amount of one dollar damages.*"    On the next day, July 17th, judgment was entered on the verdict in favor of plaintiff for one dollar damages and costs. On the third of August following, the plaintiff moved the Court on the pleadings and verdict, firstly, to set aside the judgment, in order that the proper judgment might be entered; secondly, that upon the pleadings and verdict the plaintiff have leave to amend the prayer of the complaint by inserting a prayer that plaintiff may have judgment for the restitution of the property; thirdly, that upon the pleadings and verdict the plaintiff have judgment for the restitution of the property; fourthly, that upon the pleadings and verdict the plaintiff be adjudged entitled to the exclusive possession of the property, rights, etc., that plaintiff have a perpetual injunction and general relief in the premises; and fifthly, that plaintiff have judgment on the second count, as therein prayed. All of which motions, after consideration, were denied.

This cause of action is strictly in trespass at common law for damages. In fact, the pleader, in alleging the wrong complained of, follows very closely the language of the "count for a common expulsion" in 2 Chitty's Pleading, 685,

and the prayer only demands a judgment for damages, the appropriate judgment in an action for trespass. The verdict responds in damages. The cause of action alleged, the prayer, and the verdict, are in strict accord. It is true, that forms of action have been abolished, but the substance as well as the form of the action is trespass.

It is said, however—and in this we agree with appellant—that, although this complaint, substantially, and in form, presents a cause of action for trespass at common law, yet the averments are, also, broad enough to entitle plaintiff to a judgment for possession of the property and rights from which it has been amoved and dispossessed; that such relief is consistent with the facts stated in the complaint and embraced within the issues formed; and that, under section one hundred forty-seven of the Practice Act, when an answer is filed "the Court may grant any relief consistent with the case made by the complaint and embraced within the issue." But the Court *may* grant, not *must*. That is to say, it may grant any such relief, provided the facts within the issues *proved* and the circumstances justify it, but, certainly, not otherwise. The verdict in this case does not necessarily find all the facts averred in the complaint. The complaint alleges a trespass on the dam site and dam in process of erection, and on the site for a canal and the canal thereon projected, surveyed, and commenced, and an interference with plaintiff's water rights, and expressly asks damages for the wrong, and the verdict finds some trespass or interference of some kind alleged, upon the whole or some part of the property, and that the plaintiff is entitled to one dollar damages. But it would be sufficient, to justify this verdict, to show by proofs that the trespass was committed but for a day, or an hour, at any time before the commencement of the suit, and upon any part of the property described. It might not have been continued. The possession might have ceased long before the commencement of the action, so that, at the time of the commencement of the suit, the defendants were not in possession, or the

right of possession on the part of the plaintiff might have ceased, or been abandoned, or transferred before action brought. On many grounds there might be no right to a judgment for *possession* proved, although a right to recover *damages for the trespass* was shown. The testimony is not in the record, and we do not know what facts were proved. The verdict does not necessarily go beyond a trespass and right to damages. It does not necessarily determine all the issues. The judgment was satisfactory to the Court below, and we must presume, in support of the action of the Court, that it covers all the issues proved in favor of the plaintiff, or which the proofs justified. The form of the verdict is peculiar, and indicates that the jury only supposed the plaintiff entitled to damages on the evidence. There is certainly nothing to indicate that they found in favor of plaintiff, as against defendants, the right to *present possession,* or right of possession to the dam site or canal, or a right to the present use of the waters of the Yuba River at the commencement of suit. We cannot presume, against the action of the Court and the record, that the plaintiff proved *other issues than those to which the prayer of the complaint relates, or other than such as are sufficient to sustain the judgment as it was entered.* The District Court was in a position to determine whether *the judgment covers all the issues proved,* and it evidently was of opinion that it did, or a different judgment would have been entered, especially when the question was directly presented for adjudication, and the right to a different judgment urged and adjudged against plaintiff. There is no ground for supposing the judgment was inadvertently entered to correspond with the relief asked in the complaint. There is nothing presented in the record by which we can determine that the Court erred on this point, and we have often said that error must be made to affirmatively appear by the party alleging it. The record in this case certainly does not *affirmatively* show that the Court erred in refusing to enter a judgment for restitution, etc.

The same principle applies to the motion, after verdict

and judgment, for leave to amend the prayer of the complaint, so as to ask for a judgment for possession, and lay the foundation for another motion to modify the judgment. It does not appear that the issues, to which the prayer to be added applies, were proved or found by the jury. The verdict in this case, as we have seen, does not necessarily find for plaintiff on that issue, although it might have done so upon proper evidence, for a mere trespass without any right of possession at the time of the commencement of the suit, is sufficient to justify the verdict under the pleadings, and *is all that is looked to in the prayer, as it stood at the trial.* Section thirty-nine of the Practice Act says: " The complaint shall contain  *  *  *  a demand of the relief which the plaintiff claims. If the recovery of money, or damages be demanded, the amount thereof shall be stated." The complaint did particularly specify the relief demanded, as here required, and that relief was a judgment for damages, the amount of which was stated, and the relief demanded was strictly in accordance with the theory of the case as stated. Having been thus specific in stating the relief demanded, and the relief being appropriate, the defendants were entitled to suppose the case would be tried in accordance with the theory of the case thus indicated by the facts as stated, and the relief prayed. They might make a very different defense to an action to recover the possession of valuable property, from that which they would in an action for damages for a simple trespass, since there might be a cause of action for a trespass, but none at the time of commencing the suit for possession. Other evidence of a different character to different facts would be necessary on the issue of the right to possession at the time of the commencement of the action. At all events, the testimony might be confined to the issues as to the trespass charged, and, if so, outrageous wrong and injustice would result, if, after trial and verdict for plaintiff on the issue as to a mere trespass, when too late to remedy the defect of proof on other issues, upon which no relief was asked, the Court should allow a prayer for other and differ-

ent relief to be inserted, and then, assuming that all the
issues had been tried and found for plaintiff, render a judg-
ment covering issues which defendants had not contested, or
been called upon by the state of the pleadings at the time
of trial to contest. Such a practice would mislead, and work
intolerable injustice. The theory of our Practice Act, and
especially of the section cited, is, that a plaintiff shall not
only state the specific facts which constitute his cause of
action, but shall state the specific relief to which he con-
siders himself entitled. The policy is, to apprise the oppo-
site party of the precise nature of the demand, in order that
he may come prepared to meet it. Where the facts alleged
in the complaint may constitute two or more different causes
of action, and authorize different judgments, the prayer
becomes significant, and may determine the nature of the
action. (*People* v. *Mier*, 24 Cal. 61; *Arrington* v. *Liscom*, 34
Cal. 375.) We said in regard to a judgment declaring cer-
tain deeds void, when no such relief was asked by a plaintiff,
in *Morrison* v. *Bowman*, 29 Cal. 354: "Nor do we discover
any reason for declaring null and void the bond executed to
Bowman, and the compromise entered into and the release
executed by Mrs. Smith. She does not ask to have the same
so declared and decreed, and it was not the duty of the Court
to extend to her a real or supposed benefit that she mani-
fested no desire to obtain. (See, also, *Bigelow* v. *Grove*, 7
Cal. 135.)" It is true, as we have before seen, that under
section one hundred forty-seven, when an answer has been
filed the Court may grant any relief consistent with the
case made by the complaint, and embraced within the
issue, but this must be in a case under circumstances
which would justify it. Thus when the facts averred and
the issue joined not only justify the relief asked, but still
further relief, upon making the proper proofs, and *all* the
issues have been fully litigated by both parties without
objection, and fairly determined, and the additional relief,
to which the proofs show the party entitled, has been
asked in proper time, the Court may give it, and amend

the prayer to correspond with the judgment, if such amendment be necessary under that section. But the giving of additional relief, either with or without amending the prayer, if no amendment is necessary, is a matter left to the sound discretion of the Court before which the trial is had, to be exercised in view of the circumstances of each case as it arises. The Court which tries the case is in a situation to determine whether the proofs, the circumstances, and justice to all parties justify relief other than that specially prayed, and whether the amendment may be allowed in that stage of the proceedings, without prejudice to the rights of the defendant. But the District Court is not bound to give other relief than that specifically asked, or to allow an amendment of the prayer to correspond with it, on application made after trial and verdict upon the theory of the case stated, and in view of the relief asked in the complaint, without reference to the question, whether all the issues have been fully litigated and determined in favor of the plaintiff, or to the proofs and circumstances of the case. If such practice could be tolerated, defendants would be liable to be misled, and have judgments entered against them on issues never, in fact, litigated and determined. The matter rests, where it should, in the sound discretion of the District Court. If this discretion is abused, and relief improperly granted, when not asked, or justified by the proofs, or refused where the plaintiff is clearly entitled to it under the proofs and circumstances of the case, the party seeking to reverse its action must make the error clearly appear, for all presumptions are in favor of the action of the Court. In this case there is nothing to show that the Court erred, or abused its discretion, in the particular under consideration. All the relief asked in the complaint was given; the averments of the complaint, verdict thereon, and judgment are in strict accord, and we are not at liberty to suppose that all the relief to which the plaintiff showed itself entitled was not given.

It is claimed, also, that the prayer in the second count is applicable to the whole complaint—is broad enough to entitle the plaintiff to the relief demanded. Each count is wholly independent of the other and complete within itself, as much so as if they were in separate actions, each having its appropriate beginning, conclusion and prayer, and each is separately signed by counsel and stands by itself. The prayer of the second count does not have, and is not designed to have, any reference to the first count. The introduction to the second count and the conclusion both show that plaintiff did not claim, or intend to claim, any relief at law under this count, and that the facts, so far as they constitute a cause of action at law, were only introduced as the basis upon which they founded their claim to equitable relief. And the prayer asks that plaintiff be adjudged entitled to the waters of the South Yuba; that defendants be enjoined from trespassing upon their location or interfering with their rights to divert said waters at the point designated, "or for such further order or relief as to the Court *may seem equitable, just, and meet, and for general equitable relief.*" This is but a prayer for equitable relief upon the count to which it was appended, and defendants had a right to so regard it. It had no reference to the other count, nor to any legal relief on the count to which it belonged. It went out of the case with the count of which it formed a part. But if it could be considered as applying to the first count, and sufficient to cover any relief within the issues, it still does not aid the plaintiff, for the reasons already stated in discussing the other points, it does not appear that the issues necessary to sustain a judgment for possession were proved or found for plaintiff.

The only remaining question arises on the order sustaining the demurrer to the second count. We do not know upon what ground the Court sustained the demurrer; but as it overruled the demurrer to the first count, which is identical, so far as the legal rights upon which the claim for equitable relief is superinduced are concerned, it is argued that the Court must have regarded the count as looking to an

equitable cause of action alone, and held that it presented no ground for equitable relief, and was, therefore, insufficient. It was undoubtedly designed only to present an equitable cause of action, but it is clear that the second count presents no grounds for an injunction, or for equitable relief. It seeks only to restrain the commission of naked trespasses, with nothing in the nature of waste. There is no averment that the plaintiff ever, in fact, diverted the waters of Yuba River, or actually applied them to any use whatever, or that it ever was, or that it is yet, in a condition to divert or use the water; or that it could now in any way use it, until plaintiff constructs a dam and canal, which are now only in process of construction. Of course, till the plaintiff can use the water itself, it can be no injury for others to use it. The Court will not restrain the mere diversion of the water by others till the plaintiff can make some possible use of it. It does not appear that there is any injury for which a recovery at law would not be a full, speedy, and adequate remedy. *Leach* v. *Day*, 27 Cal. 645, and *Tevis* v. *Ellis*, 25 Cal. 516, are in point and are conclusive.

As a suit to determine an adverse claim to real estate there is no ground for equitable relief, for the very first requisite to the maintenance of such an action—possession by the plaintiff—appears by the averments of the complaint to be wanting. (Practice Act, Sec. 254; *Lyle* v. *Rollins*, 25 Cal. 437; *Brooks* v. *Calderwood*, 34 Cal. 563; *Rico* v. *Spence*, 21 Cal. 511; *Curtis* v. *Sutter*, 15 Cal. 259; *Pralus* v. *Jefferson Gold and Silver Mining Company*, 34 Cal. 558.)

If an action of trespass is not sufficient, it is plain that an action to recover possession of the dam site and dam in process of construction, and of the canal site and canal thereon projected, surveyed, and commenced, would afford a complete and adequate remedy for any injury averred, or that is likely to arise, till the plaintiff is in a condition to use the water, or be injured by its diversion from it by defendants. There is, then, no cause of action for equitable relief stated.

But the second count is a verbatim copy of the first down

to the prayer of the first, and, if it contains no new material fact, it contains every fact alleged in the first; and, it is said by appellant, that if the first count contains a good cause of action, the second must be sufficient to entitle it to relief at law, if not in equity, and that it is good against a demurrer; that, as forms of action are abolished, a party is entitled to such relief as the facts justify, whether that relief be at law or in equity, and that a demurrer, on the ground that no cause for equitable relief is stated, would be but a demurrer to the prayer and not to the body of the complaint. This may be conceded, and that the Court erred in sustaining the demurrer on this ground, but it does not follow that the judgment must necessarily be reversed. We have held many times that we will not reverse a judgment for an error which could not possibly have injured the party demurring. And in this case the error, if it be one, is manifestly one of that kind. The matter added to the first count to make up the second, as we have already seen, constitutes no new or further ground for relief. It contained nothing material— nothing that could modify or extend the relief. It may, therefore, be laid out of the question, as it is by appellant for the purposes of this point. We have, then, two counts, the second being a verbatim copy of the first. All that could be done under the second could be done under the first—and all the relief attainable under one could be had under the other. The second count, under this view, was simply redundant, and, but for the claim for equitable relief would have been struck out as such on motion. The party got, or might have had, under the count held good, all that he could possibly have got under both counts. If he failed to get it, it was not in consequence of the ruling on the demurrer or of being precluded from using the rejected count. We cannot conceive of any injury he could have sustained by the ruling on the demurrer.

But we also think that the demurrer is well taken, on the ground that two causes of action are improperly joined and mingled together in one statement, without being separately

set forth as distinct causes of action. The entry upon, and amotion of plaintiff from, its "site for a dam," and "dam in course of construction thereon," and "site for a canal and canal thereon projected, surveyed, and commenced," may, perhaps, be regarded as a single cause of action. They are land, and for the purposes required must necessarily be connected and continuous, a part and parcel of one entire and complete, fixed and immovable thing. When trespassed upon, or taken from the possession of the plaintiff, and withheld as a whole, by one act, we do not see why the act should not constitute one cause of action, as much so as the taking possession and wrongfully withholding of an entire continuous tract of one hundred acres of land. But the water right, when acquired, although intimately related to and connected with the site for a dam and canal, and dam and canal commenced, etc., is a different thing, even though each may be necessary to make the other available or useful. They are capable of several and distinct injuries, giving rise to separate and distinct causes of action, for which there are separate and distinct remedies. The dam and canal may be trespassed upon, broken down, destroyed or taken into possession under a claim of right, without taking away the water, or preventing its use in any other mode or place, or without questioning plaintiff's right to it, and plaintiff may have its action for the trespass, or to recover the possession of the land constituting the dam and canal, or their site; and the water may, also, be diverted and taken away without in any way disturbing or interfering with the dam and canal. · The possession and right of possession of the dam site and dam, and canal site and canal may exist, and a cause of action arise for trespass or ouster long before any present *water right* capable of injury by diversion and use by other parties has any existence. Indeed, such possession and right of possession for mining purposes must, in every instance, necessarily exist prior to the vesting of a complete water right, capable of injury by diversion. A party may to-day take up a site for a dam and canal, and claim the waters of

a river, to be diverted at that point, and immediately commence work with a view of appropriating the water to his use for mining purposes, and yet, although laboring with all diligence, be unable actually to use the water for any purpose for years to come. Until he can use it, another party may divert the whole water and use it, provided he can do so without injury to the plaintiff's dam or canal, or the progress of his work, and there would be no injury to the plaintiff's water right, and no right of action to establish the water right, or recover the water. There is, in fact, as yet, no present water right to be affected. The party has merely acquired the possession and site for his dam and canal, and a right, by diligently pursuing his object, to acquire a future right to the possession of the water, which, when acquired, shall, for the purposes of priority and of redressing any injuries that may thereafter accrue, date by relation from the first act in selecting the location and making the claim. But while pursuing his work, and constructing his dam and canal, with a view to the future appropriation of the water, and before any present water right, capable of injury by diversion or use by others, has been acquired, his dam and canal may be injured by trespassers, or taken from him, and he be obstructed in his proceedings to acquire a right to the waters themselves, and he may have a cause of action on that ground. But this is necessarily a different thing and a different cause of action from an injury to his right to the water itself by diverting it from him. The possession of the unfinished dam and canal, or of the site, is not the possession and enjoyment of the water, but merely the possession of the means of acquiring, by the exercise of due diligence, a right to the water in the future. This is the doctrine of this Court, as established by a long series of decisions. The right to the water, or water right, as it is commonly called, is only acquired by an actual appropriation and use of the water. The property is not in the *corpus* of the water, but is only in the use. The latter doctrine was laid down in *Eddy* v. *Simpson*, 3 Cal. 249, and has been often repeated

since.   In *Kidd* v. *Laird*, 15 Cal. 179, our predecessors said:
" This Court has never departed from the doctrine that run-
ning water, so long as it continues to flow in its natural
course, is not, and cannot be made the subject of private
ownership.   A right may be acquired to its use, which will
be regarded and protected as property; but it has been dis-
tinctly declared in several cases that this right carries with
it no specific property in the water itself."   (See, also, *Mc-
Donald* v. *Askew*, 29 Cal. 206.)

Until a claimant is himself in position to use the water,
the right to the water, or water right, does not exist in such
sense that the mere diversion and use of the water by
another, is a ground of action either to recover the water,
or for damages for the diversion.   This is clearly the result
of the decision in *Kimball* v. *Gearhart*, 12 Cal. 29.   The
instructions approved by the Court in that case state the
necessity of an actual appropriation of the water, and a
present ability to use it, as one of the elements necessary
to the recovery against a party diverting it.   One of the
instructions speaks of the title to the water not being per-
fected " till the ditch was so far completed as to convey
water," but when completed with due diligence that the
right would date by relation from the beginning of the work.
" Possession or actual appropriation must be the test of
priority in all claims to the use of the water," etc.   " The
mere act of commencing a ditch with the intention of appro-
priating the water of a stream is not sufficient, of itself, to
give a party any exclusive right to the water of such stream.''
Diligence in following up the work, and a presumed pecu-
niary ability to complete it, are also mentioned as elements
necessary to entitle the party to connect his right upon a
final actual appropriation with the first act manifesting an
intent to appropriate, for the purpose of giving priority over
a prior actual appropriation by other parties in good faith,
by acts subsequently commenced.   (Ib. 30, 31.)   The Court
says, " the question of priority depended very much upon the
general fact, whether plaintiff had done such acts in 1854 as

*would,* in August, 1855, *when they completed their ditch* to the water in dispute, *entitle them to invoke the doctrine of relation, and get in advance of the actual appropriation* of the water *by defendants.*   *   *   *   A large number of instructions were given by the Court and several refused.   Those given are expressed with great clearness and precision.   They *embody the law, as ruled by this Court, and propositions necessarily resulting from those settled heretofore.*"   Upon an instruction refused, to the effect that "if plaintiffs did, in the summer of 1854, *acquire a right* to the water in dispute, then the law presumes they *retained the right so by them acquired,* and the burden of proving abandonment on their part is with the defendant," the Court say : " *The right of the water did not, in strictness, accrue until the completion of the ditch,* though the initiatory steps in 1854 might, by force of the *subsequent event,* have given title as against a subsequent appropriation from 1854, if done in that year.   But this language, though proper in some sense, was calculated to convey a wrong impression, as the jury *might have inferred that these acts of themselves gave a right to the water.*" (Ib. 48, 49.) And again : " The title to the water does not arise, as we have intimated before, from the *manifestation of a purpose to take, but from the effectual prosecution of that purpose.*"   So, in *Maeris* v. *Bicknell,* 7 Cal. 263, the Court say, in reference to a prior case : " It also follows from the same decision that until such *actual appropriation* there *can exist no complete right to the use of the water,* for the party *may never carry out his intention.*   But it was also held in that case that if a party commenced first to construct a work in good faith, then, although *power of enjoyment would not commence until its completion,* yet the right as against others *would have relation to the time of commencement.*"   That is to say, his right against others, after *actual* completion of the ditch and actual appropriation.   The case referred to is *Kelly* v. *Natoma Water Company,* 6 Cal. 108, in which the Court say : " Possession or actual appropriation must be the test of priority in all claims to the use of water, whenever such claims are not dependent upon ownership of the land through

which the water flows. Such appropriation cannot be con-structive, because there would be no rule to limit or control it, resting, as it must, only in intention. * * * The purchase by defendants of Walker's dam was an actual appropriation of the waters of the creek so far, but no further; and until they built a dam below, in order to make a further appropriation, any one else had a right to do so. *If they had commenced first to build the dam* in good faith, then, although their *power of enjoyment would not commence until its completion,* yet the rights as against others, *would bear relation* to the time of commencement." That is to say, the right to the water, when finally acquired, would bear relation to the commencement for the purpose of determining the question of priority. But till the party first commencing can use the water himself, that is, till the right attaches, anybody else, who has the ability to use it, may do so. That the mere diversion or use of water by another is no injury to a party claiming, till he is in a position to use it himself, and even after he has acquired a right, during any cessation of his ability, to use it, is settled by many cases. Nor is such diversion or use, or the diversion or use of any surplus beyond the amount, which the claimant has ability to use, actionable. Thus in *Brown* v. *Smith*, 10 Cal. 510, an action for the diversion of water from Brown's ditch, which had the prior right, it was held that if " Brown's old ditch, so called, was so filled with tailings during the Winter season of 1857 that it was incapable of diverting any of the waters of Rabbit Creek, then plaintiff cannot recover for loss of water from that ditch." And again in *Ortman* v. *Dixon*, 13 Cal. 39: " He was entitled to all whenever all was necessary for the mill, but whenever the mill did not need or could not use it for its operations, the defendant could use it for his purposes." *McKinney* v. *Smith*, 21 Cal 381, recognizes the same principle. As has already been remarked, even the preliminary, inchoate right to acquire in the future a right to water, which, when it becomes perfected and fully

CAL. REPS. XXXVII—40

vested, will date, by relation to the first act, for the purposes
of priority, may be lost by want of diligence in pursuing
the work and pefecting the right, so that another party,
more diligent, although commencing subsequently, may
obtain the first right by actual appropriation and possession
of the water.

*Kimball* v. *Gearhart*, 12 Cal. 29, will be found on reading
the instructions given, and the opinion approving them, a
strong case on this point. To the same effect are *White* v.
*Todd's Valley Water Company*, 8 Cal. 444, and *Weaver* v.
*Eureka Lake Water Company*, 15 Cal. 272.

In approving the seventh instruction, given at the request
of defendant, in *Kimball* v. *Gearhart*, the Court held that a
want of pecuniary means requisite to complete the work
in a reasonable time, such pecuniary inability being known
to the parties at the time of making the claim, would not
excuse a lack of diligence in prosecuting and completing
the work in a reasonable time. In *Weaver* v. *Eureka Lake
Water Company* it was also held that a claim for *mere specu-
lative* purposes by parties having no expectation themselves
of actually constructing works and applying the waters to
some useful purpose, would give them no rights against sub-
sequent appropriations made in good faith.

The principles established in the cases cited are founded
in reason. The doctrine is that no man shall act upon the
principle of the dog in the manger, by claiming water by
certain preliminary acts, and from that moment prevent
others from enjoying that which he is himself unable or
unwilling to enjoy, and thereby prevent the development of
the resources of the country by others. Anybody else may
divert and use all the water, be it more or less, that a prior
claimant is not in a present condition to use, and by lack of
diligence on his part in pursuing and perfecting a prior
inchoate right, many acquire rights even superior to his.
And these principles have a direct and practical bearing
upon the question now in hand.

Canals for mining and other purposes often run side by

side, even crossing and recrossing each other.    As one party
only acquires a right of way over the land for his canal, a
second party may acquire a similar right to another over the
same general line, so long as he does not obstruct or intefere
with the particular site of the first canal located.    A party's
right is limited to the general object for which it is acquired,
and another party may acquire another right for similar or
other objects not in conflict with the prior right.    (*Hoffman*
v. *Stone*, 7 Cal. 49; *O'Keiffe* v. *Cunningham*, 9 Cal. 590, and
cases cited.)

In view of this principle, suppose, by way of illustration,
that the plaintiff had located its site for a dam and canal,
and claimed the waters of the South Yuba River, and com-
menced the construction of the dam and canal, but, in con-
sequence of the magnitude of the work, was unable for
several years to divert or use the water, and in the mean-
time the defendants, being men of greater pecuniary ability,
should subsequently locate another claim above or near the
plaintiff's, and a canal running parallel with the plaintiff's,
and be in a condition to divert and use the water in half the
time; their acts, provided there was no interference with the
plaintiff's site and location, or obstruction to the prosecution
of its work, would be no injury to plaintiff, or cause of action
in its favor.    The plaintiff in such case has, as yet, no right
to the water so far perfected that a diversion or use by other
parties is any interference or injury.    But if the plaintiff's
work should be prosecuted with diligence and completed,
so as to entitle it to divert and use the waters, its right to the
waters thenceforth would date by relation from the com-
mencement of the work, and, should defendants thereafter
continue to divert the waters and deprive the plaintiff of
their use, an injury to their water rights then vested and
perfected would result, and a right of action for the injury
to such right accrue.    So, if, before the right of plaintiff to
the water should have become perfected, while constructing
its dam and canal, with a view to a future diversion and
actual appropriation of the water, the defendants should tres-

pass upon and destroy the works, or take possession of the site, a cause of action would arise, but it would be an entirely different cause of action from the other, arising from a diversion of the water, and not identical with it in law, or in fact. An action for damages for the injury done, or to recover the possession of the site, would be the remedy. The right to the water does not *yet* exist, *and it may never vest.* The most that is *in esse*, is, a *right to acquire, by reasonable diligence, a future right to the water.* The remedy for the two kinds of injury might be different, and the measure of damages would certainly be different, and would require different evidence. Suppose, again, that plaintiff, being without any adequate pecuniary means, claims the water in the usual way, together with a site for a dam and canal for diverting it, and that the expense of the work necessary to enable it to appropriate the waters is known to the plaintiff at the time to be entirely beyond its ability, present or prospective, or the claim is made for speculative purposes only, and the enterprise lingers for several years with a little work, such as a preliminary survey and a small amount of excavation is done—*as much as the party is able to do even*—and yet *not enough to constitute reasonable diligence*, within the principle of the cases cited, to preserve the right, or there is such want of diligence for any other reason, and another party subsequently claims the water, constructs his dam and ditch, and thereby actually appropriates it, and by his diligence ultimately secures the priority of right as to the water; the first claimant might still be in actual possession of its site for a dam and canal, and after the rights of the other party to the water had attached, might continue its work with a view of ultimately appropriating any water that might be left, and the party thus acquiring the first right to the water by his superior diligence, without diverting or using any water which did not belong to him, might maliciously, or for the purpose of obstructing the other's work and preventing competition, by a trespass upon such site for a dam and canal in process of construction, or amotion of claimant therefrom, give a right

of action, but it would be entirely different from a cause of action arising from an injury, by a wrongful diversion, to a water right already vested and perfected. There may, then, be, at least, three several distinct and different causes of action of the kind suggested.

We are satisfied, from a careful examination of the count in question, as it now stands, that there is an attempt, by a skillful combination of the language of the averments stating the cause of action, to unite two, at least, of these different species of injuries, and two separate and distinct causes of action, so as to present them as one, and, in case of success, to obtain the advantages to be derived from both. Such a mode of pleading takes the defendants at a great disadvantage. It would be difficult to separate them at the trial, or to determine exactly what cause of action a verdict for the plaintiff might cover, and relief might be thus obtained not contemplated or justified. The defendant is entitled to have each cause of action separately presented, so that he can demur to each separately for insufficiency of the facts to constitute a cause of action, if such be the case. When the two are stated together, the whole might constitute one cause of action, while the facts would be insufficient as to one and the most important cause attempted to be introduced. So, also, the defendants are entitled to have them separately stated, in order that they take issue on each separately, and have a verdict directly and distinctly upon each. They might thus succeed on one, although failing on the other, and it could be known on which they succeed and on which they fail. They could, also, better present their evidence upon the several issues, so as to avoid confusion and misapprehension in the minds of the jury.

It is claimed, however, that there is but one cause of action, and that is for an injury to the plaintiff's water right, but it is said in the same breath that "defendants have not only taken away our water rights and diverted our waters, but they have possessed themselves of our dam and canal, and the sites for them, that is, the means and conduits for the

use and enjoyment of them." This claim certainly covers both causes and species of action, and plaintiff's various motions to modify the judgment entered on the other count, which, so far as this question is concerned, is a copy of the one under consideration, asked for a judgment for the restitution of the property, rights, privileges, etc. Plaintiff at least supposes it has stated a cause of action for a wrongful diversion of the water. If the injury complained of is a diversion of the water merely, and thereby depriving the plaintiff of its right to the water, as is sometimes claimed, the rest being merely incidental, then, as we have before seen, the complaint does not state facts sufficient to constitute a cause of action in that view, and in that aspect it is insufficient. The averments of the complaint must be read together and construed most strongly against the pleader. The language is his, and he is presumed to state his case as strongly as the facts will justify. Reading the whole together, the complaint does not allege that the plaintiff had, in fact, so far completed its work as to actually take possession of, and use the water. It begins, it is true, by saying generally that it had appropriated and was in the use of certain *water rights*, but it goes on to explain how, and this was by means of a "dam then in course of construction," "into and through a canal then *projected*, surveyed, and commenced," etc. This qualification shows that plaintiff was not in a condition yet to make any actual appropriation or use of the waters, and that the mere diversion and use of them by defendants could not, then, be a cause of action. There is, however, an attempt to state this cause of action, and the plaintiff now claims it to be sufficiently stated. The defendants were entitled to have it separately stated, so that they could object to it by demurrer as insufficient. But, if the averments are insufficient to state *this* cause of action, there are averments sufficient to constitute *another* and *different* one—a trespass upon plaintiff's possession of a dam and canal site, and an amotion therefrom, and consequent obstruction of plaintiff in its efforts to perfect an inchoate right, and thereby secure

in future a right to the waters themselves. The whole being sufficient to entitle the plaintiff to *some* relief, a general demurrer for insufficiency would not avail the defendants, and the improper uniting of, at least, two causes of action in one count, *prevented them from testing the sufficiency of the real and principal cause of action*, which plaintiff now claims it has stated. It is in part to prevent such embarrassments to defendants in their pleadings that a demurrer is allowed, when separate causes of action are mingled together in one statement or count. It was, doubtless, in this case a matter of the highest importance to defendants to be able to meet directly and singly the cause of action for diversion; for if, by reason of any confusion in the minds of the jury—who are sometimes not very severe logicians—arising from the improper mode of statement in question, the plaintiff should recover on the principal cause, which it claims to have set out, before it has completed any canal, by means of which it could make use of the water, and could by the kind of judgment claimed and sought in the several motions to modify the judgment entered, take from the defendants' possession and adjudge to plaintiff the water, before the plaintiff is itself in a condition to use it, immense injury might be done to the defendants and the country supplied by them, while the water would run to waste, without benefit to plaintiff; and the *plaintiff might, after all, never complete its works, or make any actual appropriation of, or acquire any present right to, the water.* We have before seen, that until plaintiff is in a condition to use the water, the defendants are entitled to divert and use it, provided they can do so without obstructing the plaintiff in the construction of its own works with an intention to make a future actual appropriation and use; and that there can be no right of action against defendants for diverting the water in its own ditch, which does not interfere with plaintiff's work, till the plaintiff is itself in a condition to divert and use it. We think the defendants were entitled to have this cause of action separately stated,

so that it could be directly and separately met, unconnected with other embarrassing averments.

We also think the demurrer well taken, on the ground of ambiguity, in the respect specifically pointed out in the demurrer. If we had entertained any doubt on this point, upon an examination of the complaint, it would have vanished on reading the several briefs of appellant, and its several motions for amendment of the judgment, which were denied, and the denials of which constitute grounds of appeal. After considering the various and conflicting views of appellant's counsel, and the difficulty they encountered in the different stages of the proceeding, in determining the exact character of the action, and exactly what relief they wanted, we are not surprised that defendants were at a loss to divine the intentions of plaintiff, and called upon it, by their demurrer, to more specifically define its position. There could certainly be no difficulty it stating the exact cause of action relied on, whether a diversion of the water, which plaintiff had been using, and was then in a condition to use, or a trespass upon, or amotion from its dam and canal in the course of construction, and an obstruction of plaintiff thereby in its efforts to construct works, whereby it could perfect inchoate rights and acquire, in future, by actual appropriation, a right to the waters, or both. And we think the defendants should not, by an elaborate and skilled combination of language, in a form better adapted to conceal than reveal the real intention, be left in the dark as to the real cause of action designed to be alleged. If the statement of cause of action in question is not ambiguous, it would, we think, be difficult to draft one obnoxious to a demurrer on that ground.

Whether the District Court rested its decision sustaining the demurrer on these grounds or not, we think them sufficient to sustain the order and the judgment thereon; and an order correct in itself will not be reversed because it was rendered upon a wrong reason.

In this view the Court of course erred in overruling the

demurrer to the first count.  But this error was in favor of
appellant, and as plaintiff had the full benefit of its vicious
mode of pleading, it has no reason to complain on that
ground.

The discussion of the demurrer, also, suggests other dan-
gers that might result from any assumption on our part that
the verdict rendered in this case found other issues in favor
of plaintiff than such as are strictly necessary to sustain the
judgment rendered.  Had the Court entered the judgment
*asked* by plaintiff on the verdict, it would not only have
awarded to plaintiff the site for a dam and canal, with the
dam and canal projected and commenced merely, but not
completed, but would also have adjudged to it, under the
loose, general allegations of the complaint, a present, per-
fected right to the waters, as against defendants, and have
awarded to it the present right of possession, and the actual
possession of the waters, and this would, doubtless, there-
after be claimed to be *res adjudicata* against them.  Yet, as
we have seen, the averments of the complaint do not show
that plaintiff is yet in a position to use the water, or that it
has as yet acquired such a perfected right as entitled it to
such a judgment, or that plaintiff has any cause of action
for a diversion of the water.  The judgment therefore might,
and, if entered as asked, probably would, have been in favor
of the plaintiff as to its present right to the water before it
had become entitled to it, when it might never become
entitled to it, and at a time when the actual right to the use
of the water was, and might, ever after, continue to be in
the defendants.  And this result would, or might have been
worked out through the vicious mode of pleading adopted
by plaintiff, and through a trial of such issues as would
entitle plaintiff to a verdict and some relief, and afterwards
assuming that *all* the issues had been disposed of, and asking
and obtaining all the relief that could possibly be granted
under them, regardless of that which had been originally
specifically demanded in the complaint, or of the evidence

adduced. A judgment establishing a right to the water, sought by plaintiff in this case, would manifestly have been erroneous in view of the defective allegations of the complaint, on the principle before stated.

There is nothing in this opinion in conflict with anything decided when the case was here before. The complaint has since been amended, and the questions are different, and are presented in a different mode and aspect.

We find no error in the record prejudicial to appellant.

The judgment and order are therefore affirmed, and remittitur directed to issue forthwith.

SANDERSON, J., dissenting:

In the conclusion which has been reached by my associates in this case, I am unable to concur. There is much, however, in the opinion delivered by the Chief Justice from which I do not dissent. The vice in the view which has been taken, if I may be allowed to say so, lies in the circumstance that too strict an application has been made of the rules of the *old* common law (I say *old*, because the common law is a science of perpetual growth) to the acquisition and protection of water rights in the mineral regions of this State. Those rights are, to a considerable degree, *sui generis.* They are in a great measure the growth of this State, and are founded upon conditions which are, in many respects, strange to the old common law. Too close an application of the rules of the common law in vogue under different circumstances leads to mischief rather than a just settlement of legal controversies. Such rules must be modified to meet the exigencies of the changing pursuits of the people, or, in other words, a loose rein should be given to the spirit of the common law, that it may adapt itself to the new conditions and relations with which it has been called upon to deal in this State. The rules of the common law are not rigid, but flexible—its remedies are not stinted, but co-extensive with the

rights of person and property, and responsive to all the demands of justice. If the remedies already provided are inadequate, it provides a new one, to keep good its boast that there is no wrong without a remedy and no right without a shield. If new or peculiar rights arise, they are none the less entitled to the protection of the Courts, notwithstanding the technicalities of trespass, *quare clausum fregit*, or *vi et armis*, case, ejectment, or bills in equity may seem to stand in the way. The greatest beauty and crowning glory of the common law is its adaptability to new conditions. It adapts itself to every change, and provides a remedy for every wrong. If what the plaintiff has stated in its complaint be true—and for all the purposes of this occasion I must assume that it is—it has failed to obtain all to which it is, in my judgment, entitled, and that, too, without any fault or defect in the law. Without further reference to the opinion of my associates, I will briefly state the reasons why I think the judgment of the Court below should be reversed and a new trial allowed.

The second count in the complaint is a copy of the first, with the following language added: "And plaintiff avers and shows to the Court that the said defendants are continuing and threaten to continue, and, unless restrained by the order of this Court, will continue all and singular the wrongs and injuries aforesaid toward this plaintiff; that if defendants are permitted to continue the wrongs, injuries, and interference with plaintiff's rights aforesaid complained of, as they are now doing and threaten to continue to do, the injury and loss to plaintiff will be incapable of compensation in damages, and plaintiff's property, rights, privileges, and appurtenances above described, will be rendered wholly valueless to plaintiff, and the injury to plaintiff be irreparable."

The Court below held that the first count contained a cause of action, and if so, the second did, for it contained all that the first contained, and more. The matter contained in the second count which is not contained in the first tends

in no respect to negative or avoid the matter which is common to both. The only question, therefore, which could have arisen in respect to the second count, and could not have arisen in respect to the first, must necessarily have related to the kind and measure of relief to which the plaintiff was entitled upon the case stated. While, therefore, it does not appear from the record, by direct statement, upon what ground the Court below sustained the demurrer to the second count, the inference is unavoidable that it was sustained upon the sole ground that the facts stated did not entitle the plaintiff to the equitable relief demanded. Concede such to be the fact, it constitutes no reason for sustaining the demurrer. The prayer of a complaint, or of a separate count, is not the subject of a demurrer. A demurrer does not raise the question whether, upon the facts stated in the complaint, the plaintiff is entitled to the particular relief which he demands, but whether he is entitled to any relief whatever. It brings in question the sufficiency of the cause of action stated in the body of the complaint, and if, upon the facts there stated, the plaintiff is entitled to any relief whatever, either at law or in equity, the demurrer must be overruled, notwithstanding the plaintiff may have mistaken the relief to which he is entitled, or may have asked for relief in equity when he is only entitled to relief at law, or *vice versa.* A plaintiff is not to be turned out of Court merely because he does not demand the proper relief. If he does not, it is nevertheless the duty of the Court to grant him such relief as he may be entitled to upon the facts of the case. (Practice Act, Sec. 147; *Lane* v. *Gluckauf,* 28 Cal. 294; *Corcoran* v. *Doll,* 32 Cal. 88; *Marquat* v. *Marquat,* 2 Kernan, 336; *Jones* v. *Butler,* 10 How. Pr. 189.) It follows that, if the Court below was right in overruling the demurrer as to the first count, it erred in sustaining it as to the second. That the Court was right in sustaining the first count there can be no doubt. Whether the facts there stated constitute merely an action of trespass, *quare clausum fregit,* at common law, and not an action of ejectment, is wholly

immaterial, so far as the demurrer is concerned, for the reasons already suggested. For the purpose, however, of relieving the case of that question, it is proper to say that the facts stated, if true, are sufficient to entitle the plaintiff to a judgment of restitution, if he demands it. Had he demanded it in his first count, he would have been entitled to it upon the verdict. The claim of the respondents that the facts stated do not entitle the plaintiff to restitution, is without substantial foundation. It is founded wholly upon the technicalities of the law of ejectment. It is argued that upon the facts stated the plaintiff shows at best but a mere right to the use of running water, and that such a right cannot be recovered in an action of ejectment. It is undoubtedly true that at common law a watercourse *eo nomine* cannot be recovered in ejectment, the reason being that the possession of running water, from the nature of the thing itself, cannot be delivered by the Sheriff; hence the rule that the action must be laid for the land over which the water runs. But that is a technical rule of no sensible application to the conditions of this and other like cases, in view of the peculiar character of the water rights which are acquired and held by ditch and water companies in the mineral regions of this State, and the peculiar system of practice which prevails in our Courts. Such rights are not necessarily acquired or enjoyed by virtue of any title to the land over which the water runs, or any grant from the riparian proprietor, but may be acquired by mere appropriation and use of the water, without even a pretense of title to the land or any grant from its proprietor. Such practice does not require a plaintiff to come into Court with a lie in his mouth to meet the requirements of some technical form, but permits him to state his case according to the truth, and does not deny him relief because he does not found his claim to it upon a fiction. Such rights are not mere incorporeal hereditaments—they have come to be something more by a usage and custom which has prevailed in this State from the beginning, and has become a part of its common

law. By his diversion and appropriation the ditch owner acquires more than a mere natural or artificial easement in the water; he converts it into a species of merchandise, which he garners in his ditches and reservoirs—which he conveys to market, and measures out and sells for a price; and he does this not by virtue of any ownership of the land or any grant from the riparian proprietor. Such rights were created by the necessities of the country, and have been sustained and protected by the Courts upon grounds of public policy. If a party has once acquired them and is ousted therefrom, he may sue to recover them by their true name of *water rights;* and if the trespass is of a continuous and irreparable character, he may sue to enjoin the trespasser; and, under our system, he may do all this in one action, which is called a civil action, and it is of very little consequence whether it would be called, at common law, an action of ejectment, trespass, case, or a bill in equity, or all combined.

The plaintiff alleges, in substance, that (at a time stated) it had appropriated and was the owner of and in the possession, use, and enjoyment, and ever since has been and still is the owner, and entitled to the possession and enjoyment of a certain water right and its appurtenances, namely: the right to all the waters of the South Yuba River (at a certain point which is particularly described) for mining and other purposes, and the right to divert the same, and was in the actual and diligent exercise of such right by means of a dam in course of construction, and of a canal projected, surveyed, and commenced; and, being so the owner and possessed, the defendants wrongfully and with force and arms entered upon said rights, privileges, and appurtenances, and expelled the plaintiff therefrom, and have thence hitherto excluded the plaintiff. This is a good cause of action, notwithstanding it appears that, at the date of the ouster, the plaintiff had not yet actually diverted the waters of the South Yuba from their natural course. The plaintiff had located a dam and canal, the only means by which the right claimed could be enjoyed, and was diligently engaged in their construction.

This location was the inception of the plaintiff's water right, and from that time the plaintiff was entitled to be protected in its possession, as well before as after its beneficial enjoyment. The defendants had no more right to dispossess the plaintiff before its dam and canal were completed than they would have had after the dam and canal had been completed and the water actually turned into the latter. Upon the facts stated, it follows that the plaintiff is entitled to damages for the ouster, and to be restored to the possession of its water right, and dam and canal site. There is nothing, however, in either count which entitles the plaintiff to an injunction. It is not alleged that the defendants are doing any acts which will irreparably injure the water right of the plaintiff, or its dam or canal site. The only case made against the defendants is a wrongful ouster and a continued dispossession of the plaintiff, for which the latter can find an adequate remedy at law. Whether the Court below ought to have rendered judgment of restitution upon the verdict of the jury, it is unnecessary to decide. Upon that head, it is sufficient to say that such relief was within the issue, as tendered by the first count, although not expressly demanded; and if the question of title was actually tried, the Court, in its discretion, under the one hundred and forty-seventh section of the code, could have granted it, and allowed the plaintiff to amend its prayer to suit the judgment. The prayer at the conclusion of the second count is broad enough to include restitution, but the plaintiff was denied of its benefit by the erroneous ruling of the Court upon the demurrer to the second count. The case has been here before, (28 Cal. 673,) and I am satisfied that there has been some confusion of ideas as to the true nature of the plaintiff's case and its mode of treatment, which has operated to prevent a full and fair determination of the plaintiff's rights in the premises. By striking out the second count and adding to the first a prayer for restitution, I think the plaintiff's case could have been fully and intelligibly presented, and that a new trial should have been allowed for that purpose.